UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| NATIEMA BUSBY, | ) | |
| | ) | |
| PLAINTIFF, | ) | CASE NO.: 9:26-cv-2940-BHH-MGB |
| | ) | |
| V. | ) | |
| | ) | |
| TECHNICAL COLLEGE OF | ) | |
| THE LOWCOUNTRY, | ) | |
| | ) | |
| DEFENDANT. | ) | |
| | ) | |

Plaintiff, Natiema Busby, by and through undersigned counsel, brings this civil against Defendant, The Technical College of The Lowcountry, and alleges as follows:

## I. JURISDICTION AND VENUE

1. This action arises under federal law, including Title VII of the Civil Rights Act of 1964, as amended.

2. This Court has subject-matter jurisdiction because Plaintiff asserts claims arising under federal law.

3. This Court has supplemental jurisdiction over Plaintiff's related state-law claims because those claims form part of the same case or controversy as Plaintiff's federal claims.

4. Personal jurisdiction is proper over Defendants because Defendant resides in South Carolina and the acts and omissions alleged herein occurred within this State.

5. Venue is proper in this District because a substantial part of the events and omissions giving rise to these claims occurred in this District and Defendant does business in this District.

## II. PARTIES

6. Plaintiff, Natiema Busby, is an adult citizen and resident of Beaufort County, South Carolina. As all times relevant to this lawsuit, Plaintiff was employed by Defendant as a Navigator.

7. Defendant, The Technical College of the Lowcountry, is a Community College organized and existing under the laws of the State of South Carolina. Its principal place of business is in Beaufort, South Carolina.

8. At all times relevant to this lawsuit, Plaintiff was an employee of Defendant.

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission on or about July 10, 2025, alleging discrimination based on race and retaliation.

1

10. The Charge of Discrimination was filed within the time permitted by 42 U.S.C. § 2000e-5(e)(1).

11. On or about May 1, 2026, the EEOC issued a Notice of Dismissal and Right to Sue, which Plaintiff received shortly thereafter.

12. Plaintiff commenced this action within ninety (90) days of his receipt of the Notice of Right to Sue, as required by 42 U.S.C. § 2000e-5(f)(1).

13. Plaintiff has satisfied all conditions precedent to the institution of this action with respect to her Title VII claims

## IV. FACTUAL ALLEGATIONS

14. Plaintiff, Natiema Busby, is a black female.

15. Plaintiff is employed by the Technical College of The Lowcountry as a Navigator.

16. In her position as a Navigator, Plaintiff advises students and helps them identify and access resources to begin their careers after school.

17. During her employment with the College, Plaintiff performed her job duties satisfactorily and to the best of her ability.

18. On August 5, 2024, Plaintiff was informed in a meeting with her supervisor, Taylor Welborn, and the Vice President of Student Affairs, Alison Canning, that her grant-funded position would end on September 30, 2024.

19. Plaintiff was told she would need to reapply for her own position, that the position would be posted internally for seven days, and that she should update her resume and prepare to go through the full hiring process again, including a background check.

20. On August 9, 2024, Plaintiff reached out by Teams to ask about the timing of the posting because she was planning to be on vacation, and she was told that if the posting occurred during her absence, the window would be extended so she would not miss the opportunity.

21. On August 28, 2024, Plaintiff received a Teams message stating that the position would be posted soon, and on September 3, 2024, Human Resources sent an email about the end of her grant-funded position even though Plaintiff had previously been told that all Navigators, including her, had been switched to full-time employee status.

22. On September 5, 2024, Human Resources scheduled an interview for Plaintiff with Taylor Welborn and Alison Canning on September 11, 2024. Plaintiff participated in the interview even though she was already serving in the role.

23. Between September 18 and 20, 2024, Plaintiff received a job description from Human Resources, identified discrepancies in the description and title, and requested revisions. Human Resources responded that the position "is what it is" and that Plaintiff was required to perform the duties regardless of whether she agreed with the description.

24. Plaintiff made clear that she was not refusing to sign documents, but wanted to ensure they were accurate because her signature would indicate her agreement and because she was concerned that she was being misclassified or required to sign inaccurate documents.

25. During a planning stage development meeting on October 1, 2024, Plaintiff was told she would be introduced to special projects and assignments for growth, but those opportunities never materialized.

2

26. Between October 28, 2024, and January 2025, Plaintiff's white colleague, Brianna Wells, was assigned new advising responsibilities and received mentoring, training, knowledge transfer, and collaboration opportunities with other departments that were not offered to Plaintiff, even though Plaintiff had prior experience advising the same programs.

27. On January 16, 2025, Plaintiff was asked whether she would feel comfortable mentoring or assisting Brianna Wells, who had absorbed the Health Science programs Plaintiff previously advised, but Plaintiff was not given similar opportunities for advancement or collaboration.

28. On March 31, 2025, Plaintiff requested to use her work-from-home lunch hour as comp time and noted that her white colleague had accumulated comp time and received flexible scheduling without similar scrutiny. After an April 9, 2025 meeting, Plaintiff's use of her lunch hour for comp time was approved, but she was told Human Resources would need to confirm whether comp time could be used for her son's weekly medical appointments.

29. On April 23, 2025, Plaintiff was told that South Carolina law prevented her from using comp time for her son's appointments, but she was not provided with any cited regulations to prove this despite requesting them. She was also told that she was only supposed to work 37.5 hours a week, not 40 hours a week, and that if she used her comp time she would be pushed over the 37.5 hour threshold.

30. On May 20, 2025, Plaintiff brought to her supervisor's attention an issue she had discovered that resulted in the removal of 4,448 students from the system, which benefited the department significantly, but Plaintiff received no acknowledgment, and her supervisor took credit for the discovery.

31. The following day, after Plaintiff raised concerns about teamwork and communication, her supervisor told her that Plaintiff was being disrespectful and that decisions were made at her supervisor's discretion.

32. On June 16, 2025, although Plaintiff's request for a late arrival was approved, a public note stating "Check on Natiema's request" was placed on the department's shared calendar where all staff could see it.

33. Between March and June 2025, Plaintiff also began receiving repeated payroll inquiries about timesheets she had submitted, and on June 26, 2025, Plaintiff attended professional development training but felt further excluded when her request to be excused from the team-building activity was met in a manner that made her feel her attendance was not wanted.

34. In or around the summer of 2025, Plaintiff filed an EEOC charge against Defendant because of racial discrimination she suffered at the College.

35. Plaintiff later amended her EEOC charge in or around January 2026.

36. After Plaintiff filed her EEOC charge, her co-workers and supervisors became increasingly hostile toward her, and Plaintiff experienced increasingly strong racial animus in the workplace.

37. Employees and others at the College made comments about Plaintiff's EEOC charge, spread rumors about her, and targeted her because she had pursued claims against the College.

38. Since Plaintiff filed her EEOC charge in the summer of 2025, Defendant appeared to be looking for a reason to discipline her.

39. Immediately following Plaintiff's EEOC complaint in or around June or July 2025, Plaintiff began experiencing increased scrutiny and adverse treatment.

40. On July 7, 2025, Plaintiff received an email from Human Resources accusing her of a missing timesheet, and in July 2025 Plaintiff was questioned about a supposedly missing timesheet.

41. On July 17, 2025, Plaintiff received a negative performance evaluation containing feedback that contradicted her prior successful ratings.

42. On July 23, 2025, Plaintiff submitted a formal rebuttal to that negative performance evaluation.

43. On July 31, 2025, Plaintiff was summoned to a meeting with Human Resources and her Director, Taylor Welborn, with less than five hours' notice.

44. Plaintiff submitted a travel reimbursement on August 8, 2025.

45. Defendant delayed processing that travel reimbursement from August 8, 2025 through September 24, 2025.

46. On August 22, 2025, after Plaintiff signed her performance evaluation for a second time, Human Resources falsely claimed that she refused to sign it, and the signed copy of Plaintiff's evaluation was then removed from her employee portal.

47. During September and October 2025, Plaintiff's supervisor, Taylor Welborn, interfered with Plaintiff's professional development and micro-certification course selections.

48. Ms. Welborn gave inconsistent and pretextual reasons for changing Plaintiff's course selections and created obstacles to Plaintiff's enrollment.

49. On October 6, 2025, Ms. Welborn stated that she preferred colleagues not take the same training, yet Brianna Wells and Curtis Bolden were permitted to enroll in the same course concurrently.

50. Throughout July, September, October, and November 2025, Human Resources representative Monica Ramsey repeatedly sent Plaintiff emails alleging that her timesheets were missing or incomplete.

51. In fact, Plaintiff had submitted those timesheets, and they were awaiting supervisor approval.

52. From September through November 2025, Plaintiff received a series of additional emails from Human Resources regarding allegedly missing timesheets that had, in fact, already been submitted and were awaiting supervisory approval.

53. In November 2025, while Plaintiff was working in the office, a work-study student named Keenan, who is a Black male, approached Plaintiff and asked to speak with her.

54. Keenan appeared upset because he believed Plaintiff had reported him to Curtis, their supervisor, for failing to plug in the work tablets so they could charge.

55. It was Keenan's responsibility to make sure the tablets were plugged in every day so they would be ready for staff members to use.

56. Plaintiff acknowledged that it was Keenan's responsibility and noted that he had repeatedly failed to do so, but she told him that she was not the person who reported him and that Curtis must have found out on his own or heard it from someone else.

57. After Plaintiff told Keenan that she had not reported him, Keenan accused Plaintiff of lying, and a verbal altercation followed.

4

58. Keenan continued to insist that Plaintiff must have been the one who reported him despite Plaintiff's assurances that she had not.

59. The exchange was heard from outside the room.

60. After the conversation ended, Plaintiff left and continued with her workday, believing the matter had been resolved.

61. Keenan then filed a complaint against Plaintiff with Human Resources accusing Plaintiff of hostile and unprofessional behavior.

62. Plaintiff alleges that accusation was false.

63. Although Keenan approached Plaintiff, accused her of something she had not done, and called her a liar, Defendant treated the incident as grounds for disciplinary action against Plaintiff.

64. It was highly unusual for a minor verbal altercation about work to be escalated to Human Resources in that manner.

65. By the beginning of December 2025, Plaintiff went out on FMLA leave.

66. On December 5, 2025, Plaintiff's supervisor, Taylor Welborn, requested medical documentation for a two-day sick leave.

67. Plaintiff alleges that request was contrary to company policy, which required a doctor's note only after three consecutive days.

68. After Plaintiff provided a doctor's note, Human Resources Director Alison Caddus confirmed that the note was not necessary.

69. During that exchange, Ms. Welborn misrepresented Plaintiff's leave request to Ms. Caddus.

70. While Plaintiff was on FMLA leave, Human Resources contacted Plaintiff and told her that she had been written up for the November 2025 incident involving Keenan.

71. Plaintiff was upset that Defendant contacted her about that disciplinary matter while she was on FMLA leave, and she disagreed with the facts and conclusions stated in the write-up.

72. Plaintiff nevertheless signed the write-up because she felt she had no real choice.

73. As part of the write-up, Defendant also revoked Plaintiff's work-from-home privileges.

74. As a Navigator, Plaintiff had regularly worked from home several days per month, and working from home had been a normal part of Plaintiff's work arrangement since she began working as a Navigator for Defendant in 2023.

75. On December 8, 2025, Plaintiff's physician ordered her to take medical leave from work because of the ongoing workplace stress and harassment.

76. Defendant's conduct caused significant professional and personal harm to Plaintiff.

77. Defendant's conduct caused severe emotional distress, anxiety, and related medical issues.

78. Defendant's conduct also harmed Plaintiff's professional reputation.

79. Plaintiff alleges that the pattern of conduct created an intolerable work environment and forced her from the workplace onto medical leave.

80. In her EEOC filings, Plaintiff further alleged that these actions, taken as a whole, amounted to a constructive discharge.

81. After Plaintiff amended her EEOC charge in January 2026, she returned from FMLA leave during the first week of February 2026.

82. When Plaintiff returned, she was not certain whether her work-from-home privileges had already been revoked or when the revocation was supposed to take effect.

83. On February 4, 2026, Director Taylor, a white female, contacted Plaintiff after a meeting and asked whether Plaintiff would be working from home that day because Plaintiff usually worked from home on Wednesdays.

84. Plaintiff responded that she believed she was supposed to be working from home that day.

85. Later that morning, after Plaintiff had already begun working, Human Resources contacted Plaintiff and told her that she needed to come into the office because her work-from-home privileges had already been revoked.

86. Upon information and belief, Director Taylor contacted Human Resources after speaking with Plaintiff to determine whether Plaintiff was still permitted to work from home.

87. After Human Resources contacted her, Plaintiff apologized for any confusion or miscommunication and immediately went to the office to complete the rest of her workday.

88. Plaintiff alleges that Defendant used the February 4, 2026 incident to set her up for further discipline.

89. Plaintiff had just returned from FMLA leave and had recently amended her EEOC charge.

90. Rather than clarify the status of Plaintiff's work-from-home privileges in a reasonable manner, Defendant treated Plaintiff's confusion as another opportunity to scrutinize and potentially discipline her.

91. Defendant's interference with Plaintiff's professional development opportunities, exclusion from advancement and workplace benefits, public and unwarranted scrutiny of her work and schedule, delayed reimbursement, retaliatory discipline, revocation of work-from-home privileges, and damage to her professional reputation altered the terms and conditions of her employment, created an abusive work environment, and would dissuade a reasonable worker from making or supporting a charge of discrimination.

## V. CAUSES OF ACTION

### Count I - Race Discrimination in Violation of Title VII

92. Plaintiff incorporates by reference the preceding paragraphs.

93. Plaintiff is a Black female and therefore a member of a protected class.

94. Plaintiff was qualified for her position and was performing her job as a Navigator.

95. As alleged above, Defendant subjected Plaintiff to adverse and unequal treatment affecting the terms, conditions, and privileges of her employment.

96. Defendant's treatment of Plaintiff was accompanied by racial animus, and Plaintiff experienced increasingly strong racial hostility after she complained of racial discrimination.

97. Defendant discriminated against Plaintiff because of her race in violation of Title VII.

98. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages.

## Count II - Hostile Work Environment in Violation of Title VII

99. Plaintiff incorporates by reference the preceding paragraphs.

100. Plaintiff was subjected to unwelcome harassment by supervisors, co-workers, and other agents of Defendant.

101. As alleged above, that harassment included increasingly hostile treatment after Plaintiff filed her EEOC charge, comments and rumors about her EEOC activity, repeated false accusations and unjustified scrutiny concerning timesheets and workplace conduct, interference with her professional development, and disproportionate discipline and continued targeting in connection with the Keenan incident and after her return from leave.

102. Plaintiff alleges that this harassment was accompanied by racial animus and was because of her race.

103. Considering the totality of the circumstances, the harassment was severe or pervasive enough to alter the terms and conditions of Plaintiff's employment and create an abusive working environment.

104. Defendant knew or should have known of the harassment because Human Resources, Plaintiff's supervisors, and other management personnel participated in it and/or were aware of it, yet failed to stop it.

105. As a direct and proximate result of Defendant's conduct, Plaintiff suffered emotional distress, anxiety, medical harm, reputational harm, and other damages.

## Count III - Retaliation in Violation of Title VII

106. Plaintiff incorporates by reference the preceding paragraphs.

107. Plaintiff engaged in protected activity by filing an EEOC charge in or around the summer of 2025, amending that charge in or around January 2026, complaining about racial discrimination, and participating in the EEOC process.

108. After Plaintiff engaged in that protected activity, Defendant subjected her to materially adverse actions and retaliatory scrutiny, as alleged above, including the conduct described in paragraphs 19 through 34 and 48 through 80.

109. Those materially adverse actions included negative and false performance-related actions, repeated baseless accusations regarding timesheets, interference with Plaintiff's professional development, delayed reimbursement, retaliatory discipline arising from the Keenan incident, revocation of Plaintiff's work-from-home privileges, and continued scrutiny and targeting after Plaintiff amended her EEOC charge and returned to work.

110. The timing and sequence of events, the comments and rumors about Plaintiff's EEOC charge, the hostility that followed her protected activity, and Defendant's continued targeting of Plaintiff support the inference that Defendant acted because Plaintiff engaged in protected activity.

111. As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered economic loss, emotional distress, reputational harm, medical harm, and other damages.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendant, and award the following relief:

A. Declare that Defendant violated Title VII;

B. Award Plaintiff all available back pay, lost wages, lost benefits, and other economic losses;

C. Award Plaintiff compensatory damages for emotional distress, anxiety, medical harm, and reputational injury;

D. Award equitable and injunctive relief sufficient to stop Defendant's discriminatory and retaliatory conduct and to make Plaintiff whole;

E. Award front pay or other appropriate equitable relief to the extent necessary;

F. Award Plaintiff her attorney's fees, costs, and allowable interest;

G. Award such other and further relief as the Court deems just and proper.

## VII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

RESPECTFULLY BY:
s/Aaron V. Wallace
Aaron V. Wallace (100255)
Wallace Law Firm
1416 Laurel Street, STE B
Columbia, SC 29210
Fax:839-218-5786

June 26, 2026

8